**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET** |
| | * | |
| **VERSUS** | * | **NO. 94-197** |
| | * | |
| **ROLANDO FERNANDEZ** | * | **SECTION "L"** |

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant Rolando Fernandez's Motion to Re-open and Re-urge his
Motion for Post-Conviction Relief under 28 U.S.C. § 2255. (Rec. Doc. 291). The Court has
reviewed the documents and applicable law and, having held two hearings on this motion, now
issues this Order and Reasons.

**I.     BACKGROUND**

On July 7, 1994, Fernandez was named in two counts of a four-count indictment. (Rec.
Doc. 1). Count one charged Fernandez and co-defendant Luis Sensat with conspiring to possess
with intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1), all in
violation of 21 U.S.C. § 846. Count three charged Fernandez and Sensat with distribution of
cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Counts two and four of the
indictment pertained only to Sensat. Count two charged Sensat with engaging in a continuing
criminal enterprise from in or about 1984 to in or about 1993. This charge alleged that Sensat
knowingly and intentionally violated felony provisions of the Comprehensive Drug Abuse
Control Act of 1970, undertook such violations with five or more persons, obtained substantial
income and resources from such violations, and occupied a position of principal administrator,
organizer, and leader of the criminal enterprise, namely the "Sensat Drug Organization." This

1

was done all in violation of 21 U.S.C. § 848.  Count four charged Sensat with causing another person to travel in interstate commerce in furtherance of the distribution of cocaine, in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2.  (Rec. Doc. 1).

The Government brought charges against a total of sixteen other, related Defendants, who were each charged with various drug-related offenses.  (Presentence Investigation Report, Rec. Doc. 191).  Between 1989 and 1994, each of the other sixteen Defendants pleaded guilty.  According to Fernandez's trial lawyer, the Government made two plea offers to Fernandez during the course of the case.  (Rec. Doc. 318 at 11).  The first was made very early on in the case.  The Government offered him the option of pleading guilty to one of the two counts, and in exchange, Fernandez would have faced a prison sentence of approximately fifteen years.  (Rec. Doc. 318 at 12).  The second offer was made during the trial.  The Government offered to allow Fernandez to plead guilty to a charge of money laundering.  This would have resulted in Fernandez receiving a prison sentence of about seven years.  (Rec. Doc. 318 at 29).  Fernandez rejected both deals.

On September 27, 1995, after a joint trial with co-defendant Sensat, Fernandez was found guilty of counts one and three.  Sensat was found guilty of all four counts.  On December 13, 1995, this Court sentenced both Sensat and Fernandez to terms of life imprisonment.  (Rec. Docs. 167, 169).  The Court issued a Statement of Reasons for each Defendant, containing identical one-sentence explanations for the life sentences.  The Court explained, "[i]n light of the defendant's extensive involvement in the drug distribution network, the extraordinary quantity of cocaine involved, and the number of lives that he has adversely affected while attempting to seek illicit profit, the life sentence called for by the guidelines is appropriate."  This explanation was given for both Defendants.  (Rec. Docs. 172, 173).

Fernandez appealed the judgment.  (Rec. Doc. 170).  Fernandez challenged this Court's ruling on his previous motion to suppress as well as the Court's sentencing calculation. Fernandez also argued that because he had already been punished in a civil forfeiture case, the criminal conviction violated his right against double jeopardy.  *See* Brief of the Appellant at 6-26, *U.S. v. Rolando Fernandez, et al.*, 98 F.3d 1338 (5th Cir. 1996) (No. 95-31298), 1996 WL 33473463.  The United States Court of Appeals for the Fifth Circuit affirmed the conviction and sentence.  98 F.3d 1338 (5th Cir. 1996).

On September 30, 1997, Fernandez filed a motion to vacate the judgment and sentence pursuant to 28 U.S.C. § 2255.  (Rec. Doc. 216).  Fernandez alleged that he was denied effective assistance of counsel and that the prosecution unconstitutionally withheld impeachment evidence favorable to him.  Fernandez argued that his counsel was ineffective for failing to call certain important witnesses at trial and for failing to cross-examine other witnesses.  He also argued that his counsel was ineffective for failing to object to the prosecutor's closing argument.  Last, Fernandez argued that his counsel was ineffective for failing to pursue an exculpatory affidavit from co-defendant Sensat for use in a motion to sever the trials.  On August 11, 1998, this Court denied Fernandez's motion to vacate.  (Rec. Doc. 238).  On September 22, 1998, this Court denied Fernandez's motion for a certificate of appealability.  On April 9, 1999, the Fifth Circuit denied Fernandez's application for a certificate of appealability.  (Rec. Doc. 252)

Fernandez has been in custody since March 1995.  While in prison, he has never received an incident report and has a completely clean disciplinary record.  (Rec. Doc. 344-1 at 4).  He has completed numerous education and vocational programs, and he maintains above average work performance.  (Rec. Doc. 344-1 at 9).  He receives consistently excellent work evaluations. (Rec. Doc. 344-1 at 8).  The warden of United States Penitentiary, Beaumont described him as a

dependable worker and stated that "[h]e is a well respected individual who encourages others to participate in positive activities."  In 1997, Fernandez helped save another inmate's life when that inmate was found hanging from a sheet that was tied around his neck.  (Rec. Doc. 344-1 at 3).  Fernandez has completed multiple mental health programs.  He has served as a Suicide Prevention Program Inmate Companion and has participated in inmate suicide watches.  (Rec. Doc. 344-1 at 55).  He also started an inmate-led book group that meets to discuss problems in minority communities.  (Rec. Doc. 344-1 at 2, 16).  One prison staff member reported that Fernandez has used his time in prison very well, focusing on self-improvement and helping others.  (Rec. Doc. 344-1 at 16).

## II.   PRESENT MOTION

On February 2, 2012, Fernandez filed a Motion to Reopen and Re-urge his Motion for Post-Conviction Relief Under 28 U.S.C. § 2255.  (Rec. Doc. 291).  He asks the Court to reopen his original § 2255 motion, pursuant to Federal Rule of Civil Procedure 60.  According to Fernandez, "[a] motion under Fed. R. Civ. P. 60(b)(6) to reopen a motion for post-conviction relief is the proper vehicle to attack 'not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.'"  (Rec. Doc. 291-1 at 3) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)).  Fernandez claims that according to the United States Supreme Court's holding in *Gonzalez v. Crosby*, a court has the discretion to reopen a motion for post-conviction relief when the court failed to rule on all of the claims in that original motion.  Fernandez points out that in his original habeas petition he claimed that his trial counsel was ineffective for failing to pursue an exculpatory affidavit from co-defendant Sensat for use in a motion for severance.  He argues that this Court never addressed that claim, and therefore, he asks the Court to reopen his § 2255 motion to specifically address it.

4

Once the motion is reopened, Fernandez asks the Court to find that his lawyer was ineffective in his presentation of the motion to sever and his failure to pursue the exculpatory affidavit, which has since been obtained by his current counsel.  Further, Fernandez argues that had his lawyer pursued the affidavit of Sensat, this Court would have granted a motion for severance.  Therefore, according to Fernandez, the prejudice prong of a claim for ineffective assistance of counsel is met here.

The Government filed an opposition in which it argues that a Rule 60 motion is not the correct vehicle for Fernandez's claim.  (Rec. Doc. 329).  First, the Government claims that his motion is, in actuality, an unauthorized successive § 2255 petition because this Court has already denied Fernandez's ineffective assistance claim and because Fernandez advances new arguments in support of his claim.  Second, the Government argues that even if the Rule 60 motion were appropriate, it should still be denied because it was not filed within a reasonable time.  Last, the Government argues that the motion should be denied because Fernandez fails to establish that his trial counsel was in fact ineffective.

Fernandez filed a reply in which he reiterates that this Court did not rule on the specific ineffective assistance claim that he is re-urging.  (Rec. Doc. 332).  Fernandez argues that different instances of ineffective assistance are not part of a single claim and that the Court did not rule on the ineffective assistance claim that pertained to the exculpatory affidavit and the motion to sever.  Fernandez also claims that any new arguments that he makes in his motion to re-urge are permissible under Rule 60, as long as they relate to the undecided claim.

## III.   LAW & ANALYSIS

### A.     § 2255 and Rule 60

Section 2255 provides that "[a] prisoner in custody under sentence of a court established

by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  The statute establishes a timeline for such motions and states that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals . . . ."  28 U.S.C. § 2255(h).  28 U.S.C. § 2244 provides that "[n]o circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus . . . ."

Rule 60(b) "allows a party to seek relief from a final judgment, and request a reopening of his case, under limited set of circumstances . . . ."  *Gonzalez*, 545 U.S. at 528.  The rule states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ."  Included in Rule 60(b) is a list of grounds for relief, for instance "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Among the list of reasons is a catch-all category, "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

In *Gonzalez*, the Supreme Court addressed the question of whether a motion for relief from judgment, pursuant to Rule 60(b), is limited by the restrictions that apply to second or successive habeas corpus petitions.  *See* 545 U.S. at 526.  The Court limited its consideration to the application of Rule 60(b) to habeas proceedings under 28 U.S.C. § 2254, which governs federal habeas relief for prisoners convicted in state court.  *Id.* n.3.  However, the Supreme Court noted that the relevant portion of the law governing habeas proceedings for federal prisoners, §

2255, is similar.  *Id.*  In light of this similarity, as well as the decreased concerns regarding comity in the context of § 2255 petitions, this Court finds that the Supreme Court's analysis in *Gonzalez* is instructive.  *See also Peach v. United States*, 468 F.3d 1269, 1271 (10th Cir. 2006) ("we held that the same mode of analysis the Supreme Court employed in *Gonzalez* applies when considering post-judgment pleadings filed in §2255 proceedings"); *United States v. Hernandes*, 708 F.3d 680 (5th Cir. 2013) (applying the analysis set forth in *Gonzalez* to a federal prisoner's Rule 60(b) motion and § 2255 petition).

In *Gonzalez*, the Supreme Court explained that Rule 60(b) applies in habeas corpus proceedings only "'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules."  *Gonzalez*, 545 U.S. at 529 (quoting 28 U.S.C. § 2254).  The habeas statutes apply when the court acts pursuant to a prisoner's "application" for writ of habeas corpus.  *Id.* at 530.  The Supreme Court, therefore, analyzed whether a Rule 60(b) motion is a "habeas corpus application" as the statute uses the term.  *Id.*  The Supreme Court determined that a habeas petitioner's filing is a second or successive habeas application if it brings a claim that asserts a federal basis for relief from the underlying conviction or sentence.  If that is the case, the claim is a habeas corpus application or it is "similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute."  *Id.* at 531.  Allowing an inmate to use Rule 60(b) to assert such a claim for relief would be inconsistent with § 2255 because it would allow the inmate to essentially file a second or successive motion but circumvent the certification requirement.  The Supreme Court explained that a motion brings a claim "if it attacks the federal court's previous resolution of a claim *on the merits* . . . ."  *Id.* at 532.  On the other hand, "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," it is

not a second or successive motion and is not inconsistent with § 2255.  *Id.*

1. *This Court Failed to Previously Rule on Fernandez's Original Claim*

Fernandez asserts that this Court failed to rule on one of his claims in his original § 2255 petition.  He is not attacking the merits of the Court's resolution of his claim.  Rather, he is attacking a defect in the proceeding.  In *Peach v. United States*, the United States Court of Appeals for the Tenth Circuit explained that the issue of whether the district court failed to consider one of the claims the petitioner had raised in his habeas petition "asserts a defect in the integrity of the federal habeas proceeding."  488 F.3d at 1271.  The Court found that "[t]he defect lies not in the district court's resolution of the merits of the . . . claim (since it never reached those merits), but in its failure to make any ruling on a claim that was properly presented in [the petitioner's] habeas petition."  *Id.* (citing *Spitznas v. Boone*, 464 F.3d 1213, 1224 (10th Cir. 2006)).

In the present case, this Court did not address an important claim that Fernandez made in his original § 2255 petition.  In Fernandez's memorandum in support of his § 2255 motion, he argued that his trial attorney was ineffective for failing to pursue an exculpatory affidavit from his co-defendant for use in a motion to sever the trial.  (Rec. Doc. 216).  Fernandez claimed that he had advised his attorney that his co-defendant was willing to provide an affidavit on his behalf.  According to Fernandez, his attorney told him that he would work on obtaining the affidavit.  However, he did not pursue the matter.  This Court denied Fernandez's motion to vacate his sentence.  (Rec. Doc. 238).  However, this Court did not address this specific claim regarding the exculpatory affidavit.  Instead, this Court focused all of its time, attention, and research on the claims that pertained to Fernandez's attorney's trial performance.  In one paragraph, this Court disposed of these claims.  This Court's analysis, in its entirety, read:

8

> The decision not to call or cross-examine witnesses can have many reasonable bases as part of a legitimate trial strategy. *See United States v. Wilks*, 46 F.3d 640, 642-644 (7th Cir. 1995). Likewise, counsel is under no duty to object every time an objection may be warranted. *See United States v. Kaufman*, 858 F.2d 994 (5th Cir. 1988). When and for what reasons to object, can be as much a part of a reasonable trial strategy as choosing which witnesses to call. *See Wilks*, 46 F.3d at 642-644.

(Rec. Doc. 238). The Court did not discuss or consider whether the attorney's failure to pursue an exculpatory affidavit resulted in ineffective assistance of counsel. The Court went on to state that "movant has not shown that he was prejudiced by the alleged ineffective assistance." (Rec. Doc. 238). However, this statement referred to the ineffective assistance claims that the Court was considering—the claims regarding trial performance.

The Government argues that this case is similar to *In re Malcom Charles Hartzog*, in which the United State Court of Appeals for the Fifth Circuit held that the petitioner's Rule 60(b) motion was in reality a successive § 2255 motion. 444 Fed. Appx. 63 (5th Cir. 2011). Like in this case, the petitioner, Hartzog, argued that his motion was not a successive habeas petition because the court had not addressed certain claims that he made in his original habeas petition regarding prosecutorial misconduct. *Id.* at 65. The Fifth Circuit analyzed the district court's denial of Hartzog's § 2255 motion, detailing the district court's disposal of each claim. The Fifth Circuit found that the district court specifically discussed various claims regarding prosecutorial misconduct and that the court used the phrase "such as" because it "clearly intended to dispose of all the prosecutorial misconduct claims." *Id.* at 66. The present case is distinguishable from *Hartzog* in one extremely important respect. In *Hartzog*, the Fifth Circuit was analyzing a district court's opinion to determine whether the district court addressed all of Hartzog's claims in that opinion. In that procedural posture, the language in the district court's opinion became an important indicator of what the district court did and did not intend to address. The appellate

9

court concluded that the district court disposed of all claims.  Here, however, this Court wrote the opinion denying Fernandez's original § 2255 motion.  This Court, therefore, knows better than any other court whether it addressed each of Fernandez's claims.  It did not.

Since this Court did not address Fernandez's claim, Fernandez's current claim is a valid Rule 60(b) claim.  Fernandez is not contesting this Court's determination on the merits.  Rather, he is attacking a defect in the integrity of the earlier § 2255 proceeding.  Accordingly, this Court has jurisdiction over the current motion.

2.      *The Rule 60(b) Motion Was Filed Within a "Reasonable Time"*

"Rule 60(b) vests in the district courts power 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'"  *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (citing *Klapprott v. United States*, 335 U.S. 601, 614 (1949); *Menier v. United States*, 405 F.2d 245, 248 (5th Cir. 1968); *Bridoux v. Eastern Air Lines, Inc.*, 214 F.2d 207, 210 (D.C. Cir. 1954)).  Rule 60(b) "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'"  *Id.*  In light of the rule's purpose, the Fifth Circuit has explained that "it is often said that the rule should be liberally construed in order to do substantial justice . . ."  *Id.* (citing *Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n*, 507 F.2d 227, 227-29 (5th Cir. 1975); *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965); *In Re Casco Chem. Co.*, 335 F.2d 645, 651 n.18 (5th Cir. 1964); *Serio v. Badger Mutual Ins. Co.*, 226 F.2d 418, 421 (5th Cir.), cert. denied, 361 U.S. 832, (1959)).  According to the Fifth Circuit, "[w]hat is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in

order that the judgment might reflect the true merits of the cause." *Id.* (citing *Bros., Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963)).  However, this should only be done in "unique circumstances."  *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985).  The present case meets these criteria.

In an effort to strike the delicate balance between finality and the court's justice-function, Rule 60 contains time limits.  Rule 60(c)(1) states that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fernandez's motion falls under Rule 60(b)(6).  Therefore, the Court must determine if it was made within a reasonable time unless good cause can be shown for the delay.  *See also In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) ("Motions under Rule 60(b) must be made 'within a reasonable time,' unless good cause can be shown for the delay.") (citing *Pryor,* 769 F.2d at 287)).  In *In re Osborne*, the Fifth Circuit explained that this inquiry requires a case-by-case evaluation.  *See id.*  "What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."  *Id.* (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).  Such a case-by-case inquiry is consistent with Rule 60's goal of accomplishing justice in appropriate cases.

Evaluating the specific facts in the present case, the Court finds that Fernandez filed his Rule 60(b) motion within a reasonable time.  While the Court recognizes the ever-present desire to preserve the finality of judgments, this desire seems less crucial in this case.  The "final judgment, order, or proceeding" from which Fernandez is asking for relief, is this Court's Order and Reasons denying his original § 2255 motion.  (Rec. Doc. 238).  The Court finds no

compelling interest in the finality of such an Order if that Order erroneously denied Fernandez

post-conviction relief.  Relieving Fernandez of this Court's Order will simply allow this Court to

re-examine his original § 2255 petition.  Such a re-examination will not prejudice anyone.  In

fact, there are no opposing parties at all in this case that the Court must consider.[1]  Also

significant is the fact that Fernandez's charges did not involve victims who might be affected by

the Court's re-involvement in the case.  Furthermore, the reason for delay is clear—Fernandez

did not have a lawyer to handle his post-conviction issues until this Court appointed one to

represent him in 2009.  Fernandez did what was required of him, making his claim for ineffective

assistance of counsel in his original § 2255 petition.  This Court denied his motion.  Without a

lawyer to assist him thereafter, he could not have known about the possibility of a Rule 60(b)

motion that would allow him to reopen his habeas petition on the ground that the Court failed to

address a specific claim.  Once a lawyer was appointed to the case, that lawyer moved swiftly to

become reacquainted with the case and to figure out Fernandez's viable options.  This Court

closely monitored that process.  With the help of a lawyer, Fernandez was able to obtain an

exculpatory affidavit from his co-defendant—an essential piece of evidence.  On February 1,

2012, the Court held a status conference with the parties.  (Rec. Doc. 289).  Five days later,

Fernandez filed the present motion.  (Rec. Doc. 291).  Considering all of the facts in this

particular case, including the diminished interest in finality, the reason for delay, the inability of

Fernandez to learn about this procedural rule, and the lack of prejudice to other parties, the Court

finds that Fernandez's Rule 60(b) motion was filed within a reasonable time.

> 3.    *Fernandez's Rule 60(b) Motion Should be Granted*

---

[1]  The Court recognizes that the Government might be considered an interested party. However, the Government has no stake in this case analogous to that of a party in a civil case. The Government's interest that justice be done will only be served by a proper re-examination of

Having found that Fernandez filed his motion within a reasonable time, thus allowing this Court to consider it, the Court must now decide whether the motion should be granted and his case re-opened to consider the merits of his original habeas petition.  In *Seven Elves, Inc. v. Eskenazi*, the Fifth Circuit provided a list of factors that should inform a court's consideration of a Rule 60(b) motion:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

*Seven Elves, Inc.*, 635 F.2d at 402 (citing *United States v. Gould*, 301 F.2d 353, 355 (5th Cir. 1962)).

Applying these factors to the circumstances of the present case, in light of the discussion in the preceding section about this Court's discretion to further the purpose of the rule, this Court finds that Fernandez deserves the relief that he seeks.  *See e.g. Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992) ("The discretion under 60(b)(6) is said to be especially broad because relief may be granted under it 'when appropriate to accomplish justice.'").  As with any Rule 60(b) motion, granting Fernandez's motion, thereby reopening his habeas petition, will cut against the ever-present desire to preserve the finality of judgments.  On

---

Fernandez's habeas petition.

the other hand, because he is not attacking this Court's determination of the merits, it cannot be said that he is using this motion as a substitute for appeal.  The Court has already determined that Fernandez's motion was made within a reasonable time.  Furthermore, while this Court's order and reasons was not a default or dismissal, as stated previously, it did not reach the merits of the claim in question.  The Fifth Circuit, elaborating on this factor, has explained that in cases, like this one, "where denying Rule 60(b) relief 'precludes examination of the full merits of the cause,' this court has allowed for more leniency in reopening cases."  *Williamson v. City of Morgan City*, 428 Fed. Appx. 356, 358 (5th Cir. 2011) (citing *Seven Elves*, 635 F.2d at 402). Furthermore, as the Court will discuss later, Fernandez's claim has merit.  There are no intervening equities that would make it inequitable to grant Fernandez the relief that he seeks. Most importantly, the "incessant command of the court's conscience that justice be done in light of all the facts" outweighs whatever interest in finality exists here.  *See Seven Elves*, 635 F.2d at 401.  Succinctly stated: in this case the desire for finality must give way to the need for justice. In fact, the Court can think of few cases that present more pressing concerns that justice be done than the present case, in which a man was sentenced to spend the rest of his life in prison despite a potential constitutional defect in his trial.

**B.     Ineffective Assistance of Counsel**

Having granted Fernandez's Rule 60(b) motion, and having re-opened his habeas petition, the Court now evaluates the merits of Fernandez's ineffective assistance claim.  In his original § 2255 motion, Fernandez claimed that his trial counsel was ineffective in failing to obtain an affidavit from his co-defendant in connection with Fernandez's motion to sever.  The Sixth Amendment to the Constitution provides that in a criminal prosecution, the accused "shall enjoy the right … to have Assistance of Counsel for his defence."  The Supreme Court has

14

explained that the purpose of this requirement is to ensure a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* at 685. When "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," then a claim of ineffectiveness should succeed and the defendant is entitled to a new trial. *Id.*

In *Strickland v. Washington*, the Supreme Court established a test for evaluating a claim for ineffective assistance of counsel. To succeed on a claim for ineffective assistance of counsel, the defendant must show deficient performance and prejudice. *Id.* The Court also explained a number of practical considerations that are important to remember when applying this test. The Court stated:

> the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Id.* at 696.

### 1.    *Deficient Performance*

The first prong of the *Strickland* test requires the defendant to show that counsel's performance was deficient. This requires a showing that counsel's representation "fell below an objective standard of reasonableness," as determined by prevailing professional norms. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). The Supreme Court has explained that "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). On the other hand, the

Court has not hesitated to find defense counsel ineffective when his or her decisions are not based on sound trial strategy, but are instead due to lack of information or knowledge.

For instance, in *Padilla v. Kentucky*, the Supreme Court found that counsel was ineffective for failing to advise his client that a guilty plea would result in automatic deportation. 130 S.Ct. 1473, 1478 (2010) ("We agree with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."). The Court found that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 1482. Finding that the relevant immigration law was "succinct, clear and explicit," the Court held that counsel was deficient for not explaining the deportation implications to the client. *Id.* at 1483.

In *Kimmelman v. Morrison*, the Supreme Court held that counsel was deficient for failing to file a timely suppression motion. 477 U.S. 365, 385 (1986). The Court found that this failure was not the product of strategic considerations, but instead was due to counsel's failure to conduct pretrial discovery. *Id.* The Court explained that the lawyer's behavior demonstrated either "a startling ignorance of the law" or "inadequate preparation." *Id.* at 386. The Court acknowledged that it is usually appropriate to evaluate counsel's overall performance throughout a case. However, even though the lawyer's trial performance was "generally creditable enough," the Court found that his failure to perform discovery caused his performance to fall below "the level of reasonable professional assistance." *Id.*

Last, in *Rompilla v. Beard*, the Supreme Court held that defense counsel was ineffective for failing to examine the defendant, Rompilla's, prior conviction file. 545 U.S. 374, 383 (2005). The Court acknowledged that counsel had performed various tasks in order to find mitigating evidence to use during Rompilla's penalty phase. *Id.* at 381 ("This is not a case in which defense

counsel simply ignored their obligation to find mitigating evidence . . . .").  The lawyers had

interviewed five of Rompilla's family members in a "detailed manner," they had interviewed

Rompilla, and they had examined reports by three mental health experts.  *Id.* at 381-82.

However, the Court held that "even when a capital defendant's family members and the

defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to

make reasonable efforts to obtain and review material that counsel knows the prosecution will

probably rely on as evidence of aggravation at the sentencing phase of trial."  *Id.* at 377.

In *Rompilla*, the state argued that defense counsel's efforts to find mitigating evidence

through other means, i.e. interviews, prevented a finding of ineffectiveness and excused them

from looking at the prior conviction file.  *Id.* at 388.  The Supreme Court rejected that argument.

*Id.* at 388.  It was not sufficient that counsel tried, unsuccessfully, to find mitigating evidence

through other sources.  The Court explained that "[n]o reasonable lawyer would forgo

examination of the file thinking he could do as well" by interviewing the defendant and family

members.  *Id.* at 389.  The Court concluded that counsel fell below a level of reasonable

performance by not making reasonable efforts to review the conviction file.  The Court

emphasized the fact that the lawyers were on notice of the government's intent to use Rompilla's

criminal history against him and the fact that the file was a public document that was easily

accessible.  *Id.* at 390.

> a.   Defense Counsel's Performance Fell Below an Objective Standard of
>      Reasonableness

In the present case, the defense counsel's performance in failing to secure the affidavit in

question fell below an objective standard of reasonableness.  On August 7, 1995, Fernandez's

lawyer filed a motion for severance pursuant to the Federal Rules of Civil Procedure 8 and 14.

(Rec. Doc. 103).  He argued that joinder was improper under Rule 8 because the offenses

charged in the indictment were too dissimilar.  (Rec. Doc. 103).  He also argued that even if

joinder was proper under Rule 8, it was "nevertheless so prejudicial that it outweighs the interest

of judicial economy and efficiency addressed by joint trials regarding both counts and

defendants."  (Rec. Doc. 103 at 3).  Elaborating on this, Fernandez's attorney claimed that

Fernandez and Sensat had mutually inconsistent defenses.  He also stated that "should co-

defendant, Luis Sensat testify at trial, his testimony would in all likelihood exculpate Defendant,

Rolando Fernandez, to the detriment of co-defendant, Luis Sensat."  (Rec. Doc. 103 at 4).  In

support of his argument, Fernandez's counsel claimed that "[t]he district court has wide

discretion in ruling on a severance motion." (Rec. Doc. 4) (citing *Zafiro v. U.S.*, 113 S.Ct. 933

(1993)).[2]  This sentence and citation was the only case law provided in support of the Rule 14

motion to sever.

On August 29, 1995, the Government filed an opposition to Fernandez's motion to sever.

(Rec. Doc. 110).  First, the Government argued that the Defendants were properly joined because

they were members of a single conspiracy.  Second, the Government argued that Fernandez's

arguments were "unsupported" and "insufficient to meet his heavy burden to justify a severance

in this conspiracy case."  (Rec. Doc. 110 at 3).  The Government, quoting the Supreme Court's

decision in *Zafiro*, stated that "a district court should grant severance under Rule 14 <u>only</u> if there

is a serious risk that a joint trial would compromise a specific trial right of one of the defendants .

. . ."  (Rec. Doc. 110 at 4).  The Government, elaborating on the Supreme Court's decision in

*Zafiro*, explained that mutually antagonistic defenses are not prejudicial per se and that severance

is not required even if prejudice is shown.  (Rec. Doc. 110 at 5).

The Government also attacked Fernandez's argument that his co-defendant, Sensat,

_____

[2] Fernandez's lawyer cited *Zafiro* as a 1933 case.  However, *Zafiro* was decided in 1993,

"would in all likelihood exculpate" him.  The Government explained that a defendant seeking

severance based on a co-defendant's testimony must show "(1) a bona fide need for testimony;

(2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-

defendant will in fact testify."  (Rec. Doc. 110 at 5) (citing *United States v. Butler*, 611 F.2d

1066, 1071 (5th Cir. 1980)).  The Government argued that Fernandez failed to meet any of these

four requirements.  The Government stated:

> He baldly asserts that Sensat will "exonerate" him, yet fails to state
> how Sensat will do so, what Sensat will allegedly say, why
> Fernandez has a bona fide need for this alleged testimony, and
> whether Sensat will in fact testify.  Thus, Fernandez' argument
> fails.

(Rec. Doc. 110 at 5).

On September 6, 1995, the Court held a hearing on the motion to sever.  (Rec. Docs. 120;

202).  During the hearing, Fernandez's counsel opened by explaining that "we're talking about

the prejudicial spill-over of Rule 14."  (Rec. Doc. 202 at 21).  He then proceeded to offer

additional facts to the Court regarding incidents that only involved the co-defendant Sensat, not

Fernandez.  He stated that "[e]ven if causes of action or defendants are properly joined, which

they may have been in this case, we still have this analysis of the prejudicial spill-over effect . . .

."  (Rec. Doc. 202 at 26).

In response, the Government stated that "this is one of those motions that Defense

counsel sort of had to file in multi-defendant drug cases and they're almost routinely denied, and

I think the Court is on sound footing in doing that, particularly with regard to the Supreme

Court's decision in [*Zafiro*]."  (Rec. Doc. 202 at 27).  The Government assured the Court that it

would prove a connection between the activities of Sensat and those of Fernandez.  (Rec. Doc.

---

only two years before this motion was filed.

202 at 28). The Court orally denied the motion to sever, but asked the parties to raise the issue

again if the case were to go to trial. (Rec. Doc. 202 at 28).

The Court finds that Fernandez's counsel's handling of this motion fell below an

objective standard of reasonableness. Contrary to the Government's previous characterization of

it, this was not a run-of-the-mill, multi defendant drug case. Sensat was accused of being the

leader of an extensive criminal enterprise, the Sensat Drug Organization. Fernandez informed

his attorney that Sensat, the alleged leader of the organization, was willing to testify on his behalf

and explain to a jury that Fernandez was not part of the organization. There is no question that

such testimony would have been important to Fernandez's case. Not only could it have left

jurors with significant doubt regarding Fernandez's guilt, but an affidavit to this effect also

would have formed the basis for a severance of the trials.

Even more alarming is the fact that Fernandez's counsel *knew* how essential this

information was to his client's motion to sever. First, the Supreme Court had recently stated in

*Zafiro* that "a defendant might suffer prejudice if essential exculpatory evidence that would be

available to a defendant tried alone were unavailable in a joint trial." 506 U.S. at 539.

Fernandez's lawyer clearly knew about the Supreme Court's opinion in *Zafiro*, as he cited it in

his motion for severance. (Rec. Doc. 103 at 4).[3] Furthermore, in *Zafiro* the Supreme Court cited

the Fifth Circuit's opinion in *Tifford v. Wainwright.* 588 F.2d 954 (5th Cir. 1979). In *Tifford*,

the Fifth Circuit affirmed a lower court's grant of a defendant's habeas corpus motion. The

lower court found that the defendant Tifford had been denied due process by the state court when

it refused to sever his trial from that of his co-defendant. *Id.* at 955. Tifford had presented an

---

[3] Surprisingly, despite the Court's statement in *Zafiro* about exculpatory statements of co-defendants, Fernandez's counsel only cited it for the proposition that the "district court has wide discretion in ruling on a severance motion." (Rec. Doc. 103 at 4).

affidavit of his co-defendant in which the co-defendant stated that if the trials were severed he would testify that Tifford never knew about the illegal conduct. *See id.* at 957 ("The affidavits showed that the possibility of the co-defendants testifying was 'more than a gleam of possibility in the defendant's eye.'").

On top of the statements in *Zafiro* and the Supreme Court's reliance on *Tifford*, the Government gave Fernandez's counsel important case law in its opposition to the motion for severance. The Government cited *United States v. Butler*, the then-leading Fifth Circuit opinion on the issue. (Rec. Doc. 110 at 5) (citing 611 F.2d 1066, 1071 (5th Cir. 1980)). In *Butler*, the Fifth Circuit explicitly listed four elements that must be demonstrated in order to succeed on a motion for severance based on a co-defendant's possible testimony. *See Butler*, 611 F.2d at 1071. It is clear from *Butler* that Fernandez needed to demonstrate a need for the testimony, the substance of the testimony, its exculpatory nature, and the fact that the co-defendant will in fact testify. *Id.* It is equally clear that Fernandez's counsel knew about these necessary elements after reading the Government's opposition, yet he still failed to pursue the one thing that would have allowed Fernandez to satisfy these four elements—an affidavit from Sensat.

Like the immigration law involved in *Padilla*, the law regarding severance based on a co-defendant's testimony was "succinct, clear and explicit . . . ." 130 S.Ct. at 1478. An effective lawyer would have known this. Even if Fernandez's lawyer did not know the law, he certainly should have become aware of it once the Government provided it to him. The facts in this case are even more compelling than the facts in *Rompilla*. The Court in *Rompilla* found that the lawyers should have made a reasonable effort to investigate evidence that they did not know existed. Here, Fernandez's counsel knew about the existence of exculpatory evidence and did not pursue it. This was not a strategic decision made after a thorough investigation of the law

and facts.  His decision not to pursue, and present, an affidavit from Sensat in conjunction with his motion for severance was unreasonable.  This failure caused his performance to fall below the level of reasonable professional assistance.

> ### 2.    *Prejudice*

The second prong of the *Strickland* test requires the defendant to show that counsel's deficient performance prejudiced the defense.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  "The defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  The analysis should not just focus on the outcome of the proceeding but on whether the proceeding was fair and reliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."); *see also Virgil v. Dretke*, 446 F.3d 598, 613 (5th Cir. 2006).  "The result of the proceeding" refers not only to a verdict following a trial, but also to the harshness of the sentence received by the defendant.  *See Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012) ("In a case, such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether 'the result of the proceeding would have been different,' requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plea pursuant to the terms earlier proposed.") (citation omitted); *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (finding *Strickland* prejudice where an error resulted in

a sentence that was between 6 and 21 months longer than it would have been without the error).

In this case, counsel's deficient performance prejudiced Fernandez, undermining confidence in the result of Fernandez's trial.  There is a reasonable probability that had Fernandez's counsel pursued an affidavit from Sensat regarding his willingness to testify on Fernandez's behalf, the results of the proceeding would have been different.  This Court set a hearing to allow Fernandez's current attorney to present evidence as to whether Sensat had been asked to supply an affidavit and, if he had been asked, would he have given it and what would it have said.  Sensat recently appeared by video conferencing and testified before this Court that he was never asked by anyone to sign an affidavit stating that he would testify on Fernandez's behalf.  He stated that had he been asked, he would have signed such an affidavit and he would have testified that Fernandez was never involved in drug trafficking activities with him.  (Rec. Doc. 343 at 4-6).  In addition, Sensat signed a declaration stating the same.  (Rec. Doc. 291-2). This Court found Sensat's testimony to be credible.  If Fernandez's lawyer had pursued this, he would have been able to obtain an affidavit from Sensat regarding favorable testimony that he would give for Fernandez if the trials were separated.

Had the Court been presented with such an affidavit, it would have severed the trials because, as the Fifth Circuit explained in *Tifford*, failure to sever when there is an exculpatory affidavit signed by a co-defendant would result in a "fundamentally unfair" trial.  *Tifford*, 588 F.2d at 957; *see also Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981) ("Tifford and Abbott are distinguishable from the present case in that the petitioners demonstrated that the denial of their motions to sever resulted in a fundamentally unfair trial.").  If Fernandez's lawyer had presented an affidavit from Sensat containing the statements that Sensat has since stated that he would have made, this Court would have found that Fernandez satisfied the elements

necessary for severance.  There is no question that such an affidavit would have demonstrated "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed." *Butler*, 611 F.2d at 1071.  The affidavit would have been sufficient to show that "the possibility of the co-defendant testifying was 'more than a gleam of possibility in the defendant's eye . . . .'" *Tifford*, 588 F.2d at 957.  There would have been a serious risk that a joint trial would compromise a specific trial right.  Accordingly, the Court would have severed the trials.

    With the trials of Sensat and Fernandez severed, the proceedings would have been entirely different.  Based solely on the four-count indictment, it is clear that co-defendants Sensat and Fernandez were not equal participants in the criminal enterprise.  The indictment alleged that "Sensat established, in conjunction with others, a multi-state cocaine and marijuana distribution network, hereinafter referred to as the 'Sensat Drug Organization' . . . ."  (Rec. Doc. 1 at 2). Furthermore, the indictment alleged that Sensat's criminal activities took place from "in or about 1984 to in or about 1993."  (Rec. Doc. 1).  Yet the first act that the Government tied to Fernandez took place in 1989.  (Presentence Investigation Report, Rec Doc. 191 at 12).  This Court heard several days of testimony from numerous witnesses, mostly pertaining to the activities of Sensat.  Much of this evidence would not have been admissible in Fernandez's separate trial.  Furthermore, if Sensat had been tried first and was therefore able to testify on behalf of Fernandez without Fifth Amendment concerns, his testimony would have likely dramatically changed the nature of the proceedings.  There is more than a reasonable probability that a jury, hearing less evidence and an exculpatory statement from Sensat, would have reached a different verdict.  Even more certain is the fact that had Fernandez not been tried jointly with Sensat, this Court would not have imposed a life sentence.  Accordingly, the Court finds that

Fernandez has demonstrated that his trial counsel's performance was deficient and that the deficiency prejudiced him.

## IV.  CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Fernandez's Motion for Relief from Judgment, pursuant to Federal Rule of Civil Procedure 60, is hereby **GRANTED**.  This Court's judgment of August, 19, 1998, dismissing Fernandez's habeas corpus petition, is set aside and Fernandez's Motion for Post-Conviction Relief under 28 U.S.C. § 2255 is hereby **REOPENED.**

Finding that Fernandez is entitled to the habeas relief that he seeks,

**IT IS FURTHER ORDERED** that Fernandez's Motion for Post-Conviction Relief under 28 U.S.C. § 2255 is hereby **GRANTED**, the conviction is **VACATED**, and he is granted a new trial.

New Orleans, Louisiana this 2nd day of June, 2014.

UNITED STATES DISTRICT JUDGE